### E. BISBEE & CO. *vs.* E. A. TAFT.

Agreement between A. and B. by which A. agreed to build five houses for B. at actual cost, to be completed, &c., and the houses and the lots whereon they were built to be sold, and the proceeds of the sale, after deducting the cost of the houses and the value of the land rated at five cents a foot, and other expenses, to be divided between A. and B.: —

*Held*, that if this agreement could be construed as a partnership at all, it was one for disposing of the houses and land, not for building them.

EXCEPTIONS to the Court of Common Pleas.

*February* 19, 1876. DURFEE, C. J. This is a petition for a new trial, the sole ground of which is that the verdict was against the evidence. The action was assumpsit for mason's work done on two houses. Three written contracts were introduced on the trial. The first, dated October 10, 1872, was between the defendant and Walter C. King. By it King agreed to build two

dwelling-houses for the defendant for $11,350, "to be paid as required to purchase stock for said houses, provided proper security be given by said W. C. King." The second, dated October 14, 1872, was between the plaintiffs and the said W. C. King. By it the plaintiffs agreed to do the mason's work on the houses for $3,568, " to be paid as W. C. King receives it from Taft." The third, dated October 16, 1872, was between W. C. King and the defendant. By it King agreed to build five houses for the defendant at actual cost, to be completed by July 1, 1873, and the houses and the lots whereon they were built were to be sold, and the proceeds of the sale, after deducting the cost of the houses and the value of the land rated at five cents a foot and other expenses, were to be divided between the defendant and King. The last contract covered the houses contracted for by the first, but, the defendant testified, was not to supersede the first, unless all the five houses were built. After the contracts were made, the plan of one of the houses was altered, thereby increasing the cost of mason's work about one third.

The plaintiffs went to work under their contract, and continued working until November 27, 1872, when, some trouble having arisen, they saw the defendant, and had a conversation with him about their pay. The plaintiff Bisbee testified that he asked the defendant whom he should look to for pay, and the defendant replied, " I own the houses and pay the bills ; " that he then said : " Will you pay me for work I have done and will do ? " and the defendant said he would. That the defendant sent word to him by King that he had some money for him, and, December 9, 1872, he went and got $300 ; that he told the defendant he should want $500 by January 1, 1873, and the defendant promised to pay it, but did not, and that he did not finish the work because he could not get the money. In point of fact but little work was done by the plaintiffs after November 27. William ·H. Gammons was with the plaintiffs on the 27th November, and corroborates their statement. King testified that the defendant told him he had told Bisbee that he owned the houses and was to pay the bills, and that the defendant generally paid for labor and stock. The defendant testified : " Bisbee wanted to know about his pay. I told him, if his contract was carried out I would see that he got his pay. I was hurrying him

up on work all along ; told him he was slow; early in December he said he wanted some money. I let him have $300, December 9, 1872, at King's request, on his express promise that if I let him have it he would go on and finish up the cellars ; he worked only a few days after that, and left the cellars unfinished." Edwin L. Hunt testified he was present when the defendant paid Bisbee the $300 ; the defendant said : " If I pay this will you go on and finish the work," and Bisbee said he would. Bisbee denies that the defendant told him he could get his pay if the contract was carried out, but says he promised unconditionally to pay him for work done and to be done.

The jury returned a verdict for the plaintiffs for $675.91, being principally for work done and materials furnished prior to November 27, 1872. The defendant contends that he was not liable for work done and materials furnished prior to November 27, and that a promise to pay for it would be a promise to pay the debt of another, and not binding unless in writing, and that inasmuch as there is no pretence that there was any promise in writing, the verdict, in so far at least as it is founded on the claim for work done and materials furnished prior to November 27, ought to be set aside.

The plaintiffs contend that the defendant ought to pay them because he was a partner with King, or because there was a novation of the contract between King and the plaintiffs, by which the defendant was to become and did become paymaster to the plaintiffs; and, finally, because the promise of November 27 was an original promise, made in consideration of services to be subsequently performed, and, being such, it was not necessary that it should be in writing, even though it might, if carried into effect, operate as payment of another's indebtedness.

We do not think the defendant can be charged as copartner of King. The copartnership, if such it was, was for the purposes of disposing of the houses, together with the land they were built on, not for the purpose of building them.

We do not think the defendant can be charged by novation. To do so, it would be necessary to show that the defendant owed King as much as King owed the plaintiffs, and that the three parties agreed that the defendant, instead of paying King, should pay the plaintiffs, becoming the debtor of the plaintiffs in the

place of King, and that too so completely that the debt of King to the plaintiffs was thereby and thenceforth extinguished. We do not think there was any evidence to warrant the finding of such an agreement. The plaintiffs, for anything we can see, have never relinquished their claim upon King.

We do not think the defendant can be charged as on an original contract. The plaintiffs say the defendant promised unconditionally to pay for the work done and to be done. If this was so, the promise was without consideration in respect of the work already done, for according to the statement the plaintiffs put themselves under no obligation to go on and finish the work, and in point of fact did not go on and finish the work. If the promise was to pay for work done if the plaintiffs would go on and finish the work, the plaintiffs are not entitled to recover because they did not go on and finish the work. The plaintiffs say that they did not go on with the work because the defendant would not pay $500, on the first of January, 1873, as he had promised. This promise, if made at all, was made December 9, 1872, when the $300 was paid. It formed no part of the contract claimed to have been made November 27, 1872. It was a gratuitous promise. The defendant's failure to keep it would not excuse the plaintiffs for not going on and finishing the work, if they agreed to do so in consideration of the defendant's promise to pay for work previously done and to be done.

We think the defendant should have a new trial unless the plaintiffs will remit so much of their verdict as was not for work done and materials furnished after November 27, 1872.

*B. N. & S. S. Lapham,* for plaintiffs.

*Lorin M. Cook,* for defendant.